IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SONJA L. TAYLOR-BRAY, :
 :
    Plaintiff, :
 :
v. : Civ. No. 12-019-LPS
 :
DEPARTMENT OF SERVICES FOR :
CHILDREN, YOUTHS AND THEIR :
FAMILIES DELAWARE, :
 :
    Defendant. :

---

Sonja L. Taylor-Bray, Harrington, Delaware, Delaware, Pro Se Plaintiff.

Janice R. Tigani, Kevin R. Slattery, and Oliver J. Cleary, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

## MEMORANDUM OPINION

March 17, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

I. **INTRODUCTION**

Plaintiff Sonja L. Taylor-Bray ("Taylor-Bray" or "Plaintiff") filed this action on January 10, 2012 alleging employment discrimination. She appears *pro se* and has been granted leave to proceed *in forma pauperis*. The case proceeds on Taylor-Bray's Title VII employment discrimination claims against Defendant State of Delaware, Department of Services for Children, Youth, and their Families ("DSCYF" or "Defendant"), all other claims and Defendants having been dismissed or granted summary judgment.[1] (*See* D.I. 9; Civ. No. 10-978-LPS at D.I. 53, 73) Presently before the Court are the parties' cross-motions for summary judgment. (D.I. 40, 42)

II. **BACKGROUND**

Taylor-Bray was employed by the DSCYF as a youth rehabilitation counselor at the Stevenson House in Milford, Delaware, a secure facility for incarcerated youth and pre-trial juvenile detainees run by Defendant. (D.I. 2) Taylor-Bray alleges gender discrimination and retaliation following her discharge from employment on July 22, 2009. (*See* D.I. 41 Ex. 1F Charge of Discrimination 17C-2010-00256) She filed a charge of discrimination with the EEOC on April 5,

---

[1] Jimmy Watson and Taylor-Bray filed *Watson v. Department of Services for Children, Youth, and their Families*, Civ. No. 10-978-LPS (D. Del.), on November 15, 2010 alleging discrimination pursuant to 42 U.S.C. § 1981. The complaint was dismissed upon motion, and Watson and Taylor-Bray were given leave to amend. Upon the filing of an amended complaint, motions to dismiss were filed and on March 26, 2013, the Court ruled on the motions and dismissed the majority of the claims. When Taylor-Bray filed this case, the Court screened it pursuant to 28 U.S.C. § 1915(e), dismissed all claims except Title VII and unfair labor practices claim and consolidated it with Civ. No. 10-978-LPS. (D.I. 9) Thereafter, as noted, all claims were dismissed (except the Title VII employment discrimination claims on behalf of Watson and Taylor-Bray), and the Court withdrew the consolidation of Civ. Nos. 10-978-LPS and 12-019-LPS. Each case now proceeds under its individual caption.

1

2010, and a notice of right to sue was mailed to her on December 20, 2011.[2] (*See* D.I. 5)

Taylor-Bray sustained a workplace injury on June 9, 2008. (D.I. 41 Ex. 1F) Taylor-Bray's job duties included the ability to assist in the handling of serious disturbances or subsiding unruly residents, which could involve physically restraining youth by supporting the youth's body weight, and involved the ability to respond to physical confrontations. (D.I. 41 Ex. 1F; D.I. 42, Ex. Def.'s Answer to Sept. 23, 2013 Interog. No. 2; Def.'s Answer to Oct. 4, 2014 Interrog. No. 1) Taylor-Bray testified that physically restraining youths disproportionately affects females more than males "just by the mere design of the female physique and the upper body strength." (D.I. 41 Ex. 2 at 79) According to Taylor-Bray, the ratio of male to female employees on the day shift at the Stevenson House is "maybe half and half." (*Id.* at 80)

When Taylor-Bray returned to work following the injury, she was placed on light-duty pursuant to her physician's request and assigned to a control room post at the Stevenson House. (D.I. 41 Ex. 1F; D.I. 42 Dep. Ex. 12) On December 9, 2008, Taylor-Bray's physician placed her on permanent medium-duty restrictions. (*Id.*) Taylor-Bray requested an accommodation pursuant to the Americans with Disabilities Act on the basis that she could no longer restrain youth. (*Id.*)

Taylor-Bray filed a grievance on December 23, 2008 seeking unlimited computer access and claiming she received differential treatment because her disability restricted her to control room duty. (D.I. 41 Ex. 1) Taylor-Bray filed grievances on February 11, 13, and 17, 2009 raising issues of violations of the overtime policy and bumping rights for shift work, asking to be made whole, and for clarification of restrictive duties with respect to seniority. (D.I. 41 Ex. 1; D.I. 42 Ex. 3)

---

[2]Taylor-Bray filed another charge of discrimination with the EEOC (*see* D.I. 41 Ex. 1E Charge of Discrimination 17C-2009-1070) asserting disability discrimination and retaliation, but those claims are not before the Court.

2

A human resources specialist informed Taylor-Bray on February 25, 2009 that she could not keep her light-duty assignment indefinitely and because agency policy allowed for a light-duty assignment not to exceed thirty days. (*Id.*) Taylor-Bray was instructed to apply for short term disability insurance benefits. Taylor-Bray filed a claim for workers' compensation.[3] (*Id.*) Taylor-Bray later sought, and received, short term disability benefits. (D.I. 41 Ex. 1C, D; D.I. 42 Ex. 10) Taylor-Bray was instructed to transition to the long term disability benefits program, but she failed to do so. (D.I. 41 Ex. 1C, D; D.I. 42 Ex. DSCYF ROG Resp. 30, 31) The short term disability benefits ended on September 9, 2009. (D.I. 42 Ex. DSCYF ROG Resp. 30)

A May 5, 2009 report by Taylor-Bray's physician continued her on permanent, medium-duty restrictions. (D.I. 41 Ex. 1F) Taylor-Bray's physician had been provided a description of the job requirements of a youth rehabilitation counselor. (*Id.*) However, there were no medium-duty positions available as a youth rehabilitative counselor and, in June 2009, a recommendation was made to terminate Taylor-Bray's employment due to her inability to perform the essential functions of a youth rehabilitation counselor. (D.I. 41 Ex. 1F; D.I. 42 Ex. 9) Taylor-Bray requested a pre-termination hearing. (*Id.*) On July 7, 2009, Taylor-Bray's physician classified her to medium work until July 20, 2009 and then to regular duty. (D.I. 41 Ex. 1F) A pre-decision meeting was held on July 8, 2009. Taylor-Bray did not attend but she was represented by her union representative. (*Id.*) The union representative requested additional time on Taylor-Bray's behalf to clarify her return to work with restrictions. (*Id.*) On July 20, 2009, Taylor-Bray's physician provided a return to work slip that indicated Taylor-Bray was able to perform all essential aspects of a job with permanent medium-duty restrictions. (D.I. 41 Exs. 1F, 4) Taylor-Bray was advised that because her physician

---

[3]Medical records from the worker's compensation case indicate that Taylor-Bray has a permanent partial impairment of 12% of the lumbosacral spine and that she is able to perform a medium duty type job and it is a permanent restriction. (D.I. 41 Ex. 1F)

3

did not release her to full duty, the DSCYF invoked the recommendation to terminate her employment. (D.I. 41 Ex. 1F) Taylor-Bray was terminated from her position due to her inability to perform the essential functions of her position, effective July 22, 2009. (*Id.*)

After she was terminated, Taylor-Bray filed a grievance claiming discrimination due to her disability and asking for a change in supervision structure should she return to work. (D.I. 41 Ex. 4) A hearing was held on September 23, 2009 and, on October 2, 2009, the hearing officer decision denied the grievance, finding that "termination has been proven for just cause." (*Id.*) A pre-arbitration meeting was conducted pursuant to the collective bargaining agreement with no resolution. (*Id.*)

Taylor-Bray filed two unfair labor practices charges before the Public Employment Relations Board; one on November 4, 2009, and the other on January 26, 2010. (D.I. 41 Ex. 3) The first claimed her termination was retaliatory and designed to prevent her from exercising her right to participate in union activities, including the grievance procedure. The second claimed that the union was negligent and malicious in its failure to represent her and this denied her right to due process. Both charges were dismissed and both were affirmed upon review. (*Id.*) Taylor-Bray did not seek review by the Court of Chancery of the State of Delaware in either matter.

Taylor-Bray has referred to seven men to whom she compares her treatment with regard to her workplace injury and accommodation at work: Daniel Wilson ("Wilson"), Barry Pringle ("Pringle"), Istavon Norwood ("Norwood"), John Longo, Sr. ("Longo"), Wayne Taylor ("Taylor"), Cameron Henry ("Henry"), and Jermaine McElveen ("McElveen"). Wilson was placed on restricted duty in the control room at the Stevenson House for administrative reasons, did not have the same supervisors as Taylor-Bray, and when removed from restrictive duty was able to perform the essential functions of his position. Pringle was terminated from his employment and transitioned

4

from short-term disability to long-term disability due to his inability to perform the essential functions of his position. Norwood held a different position with different duties than Taylor-Bray, was employed at a different facility than Taylor-Bray, and was able to perform the essential functions of his position. Longo held a different position with different duties than Taylor-Bray and was able to perform the essential functions of his position. Taylor-Bray did not know if Taylor had medical restrictions that affected his job duties or position. Henry was employed at a different facility, was injured, and returned to full duty with no restrictions. McElveen was injured in a non-work related accident and released to return to full duty with no restrictions, and was employed at a different facility than Taylor-Bray. (*See* D.I. 41 Exs. 1F, 2) Taylor-Bray testified that females were placed on temporary restricted duty if they were injured. (D.I. 41 Ex. 2 at 83-84)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475

5

U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*,

6

829 F.2d 437, 440 (3d Cir. 1987). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## IV. DISCUSSION

Taylor-Bray alleges that she was discharged from her employment by reason of gender discrimination and retaliation pursuant to 42 U.S.C. § 2000e, *et seq.* She also attempts to reinstate previously dismissed due process claims.

Defendant moves for summary judgment on the grounds that Plaintiff failed to: (1) provide valid comparators; and (2) establish that the proffered reason for her termination was a pretext for discrimination on the basis of gender. Plaintiff moves for summary judgment on the basis that there are no material facts which create a genuine issue for trial.

### A. Discrimination

Both parties move for summary judgment on the grounds that there are no genuine issues of material fact. Title VII states that "[i]t shall be an unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). Under Title VII, a plaintiff may prove gender discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here, because there is no direct evidence of discrimination, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Taylor-Bray must first establish a prima facie case of gender discrimination by proving that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances

7

that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer "legitimate non-discriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (quoting *Fuentes*, 32 F.3d at 764 (internal citations and other citations omitted)).

Defendant argues that Taylor-Bray failed to establish that her termination occurred under circumstances giving rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. Taylor-Bray contends that her comparators are similarly situated in all material respects.

To make a comparison of Taylor-Bray's treatment to that of an employee outside her protected class for purposes of a Title VII claim, she must show that she and the other employees are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. Dec. 8, 2009) (citations omitted). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *See Houston*, 355 F. App'x at 654.

In a severance case, the relevant factors may include the positions held, policies or plans in effect, the decisionmakers, and the timing of the separation. *Id.* at 655 (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54-55 (2d Cir. 2001) (plaintiff established she was similarly situated to colleague who received more money in severance where the two employees "held positions of roughly equivalent rank . . . were fired at roughly the same time, [and] the decisions with respect to the severance were both made at the highest levels of the company"). Taylor-Bray is not required to show that she is identical to the comparator employee in each relevant factor, "but [s]he must show substantial similarity." *Id.* (citation omitted). Accordingly, in order to establish an appropriate class of similarly situated comparators, Taylor-Bray must identify employees who share characteristics that are relevant to the facts of this case.

The seven individuals to whom Taylor-Bray compares herself as having been treated more favorably are not similarly situated. The individuals were either employed at different facilities, had different supervisors, held different positions, did not sustain work-related injuries, or returned to their positions with no restrictions. In light of the foregoing, the Court finds that Taylor-Bray has failed to meet her burden to establish a prima facie case of gender discrimination. No reasonable juror could find that any of her proposed comparators are actually similarly-situated to her.

9

Taylor-Bray further contends that the job requirement of physically restraining youths has a discriminatory impact upon women. She opined that the job requirements were more difficult for females based upon typical female physiology. Taylor-Bray testified that the youth rehabilitation counselor position at the Stevenson House was held equally among men and women during the day shift.

Under a theory of disparate impact, liability may arise when "a facially neutral policy affects members of a protected class in a significantly discriminatory manner." *Healy v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996). To establish a prima facie case of disparate impact gender discrimination,

> a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern. Once it is thus shown that the employment standards are discriminatory in effect, the employer must meet the burden of showing that any given requirement has a manifest relationship to the employment in question. If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also serve the employer's legitimate interest in efficient and trustworthy workmanship.

*Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977) (internal quotation marks and citations omitted).

Taylor-Bray has not met her burden to establish that the job requirements of her position are discriminatory in effect. She has presented no evidence that the job requirements cause Defendant to hire youth rehabilitation counselors, or allow those holding that position to hold light-duty or medium-duty positions following injury, in a significantly discriminatory pattern. Indeed, the position is held equally among men and women and light-duty and medium-duty positions are provided to individuals of both genders. No reasonable juror could find that Plaintiff has met her burden.

Finally, assuming arguendo that Taylor-Bray had established a prima facie case of discrimination, Defendant provided legitimate, nondiscriminatory reasons for its decision to terminate her. The evidence indicates that Taylor-Bray was terminated because she was unable to perform the essential functions of her position, her physician having determined that she was permanently restricted to medium-duty work. Taylor-Bray filed a grievance over her termination and the hearing officer found in favor of Defendant, finding that it had just cause to discharge her. The hearing officer's decision finding just cause for Defendant's termination of Taylor-Bray is evidence that Defendant satisfied its burden at stage two of the *McDonnell Douglas* burden-shifting framework. *See Jasany v. United Postal Serv.*, 755 F.2d 1244, 1252 (6th Cir. 1985) ("While the outcome of an arbitration decision in favor of the employer is not dispositive of a Title VII suit of whether there was discrimination, an arbitration decision in favor of the employer is sufficient to carry the employer's burden of articulating some legitimate, nondiscriminatory reason for the employee's rejection.") (internal citation, quotation marks, and emphasis omitted).

There is nothing before the Court that contradicts the proffered reason for Taylor-Bray's termination. Nor are Defendant's proffered reasons for its action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003). Construing the evidence in the light most favorable to Taylor-Bray, she has not provided evidence from which a fact finder could either disbelieve Defendant's articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment action. Therefore, the Court will grant Defendant's Motion for Summary Judgment and will deny Taylor-Bray's Motion for Summary Judgment.

B. <u>**Retaliation**</u>

The complaint alleges retaliatory action was taken against Taylor-Bray. Plaintiff does not invoke Title VII retaliation, however, but retaliation under Delaware law. These claims were previously dismissed. (*See* D.I. 9; Civ. No. 10-978-LPS at D.I. 53, 73) The only claims that remain are the Title VII claims.

Nevertheless, Taylor-Bray proceeds *pro se* and, therefore, the Court addresses the issue to the extent she intended to raise a retaliation claim under Title VII. The elements of retaliation claim are that: (1) plaintiff engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Comty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

A materially adverse employment action means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation omitted). Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.*

With respect to the causation prong, the court considers whether a reasonable jury could link the employer's conduct to retaliatory animus. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (citation omitted) ("[T]he ultimate question in any retaliation case is an intent to retaliate . . . ."). In assessing this, the court considers the "temporal proximity" between the plaintiff's protected activity and the employer's allegedly retaliatory response, and "the existence of a pattern of antagonism in the intervening period." *Id.* at 450 (quotations and citations omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an

adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient)).

Taylor-Bray filed a number of grievances during the time she was on light-duty or medium-duty. She argues that adverse actions were taken against her in close proximity to the filing of grievances and internal complaints. The record reflects that Taylor-Bray submitted numerous grievances in February 2009, the last one on February 17, 2009. She was notified on February 25, 2009 that should could not remain on light-duty indefinitely and was instructed to apply for short term disability benefits. The Court construes these facts as sufficient to establish a prima facie case of retaliation.

DSCYF, however, has proffered legitimate, non-retaliatory reasons for the actions it took. Taylor-Bray's physician permanently restricted her to medium-duty after being provided with a description of her job duties. It was determined that Taylor-Bray was unable to perform the duties of her position and, therefore, her employment was terminated. Defendant's proffered reason for terminating Plaintiff's employment is not weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003).

The Court finds that no reasonable jury could find for Taylor-Bray on the retaliation issue. Therefore, the Court will grant Defendant's motion and will deny Plaintiff's motion on the retaliation issue.

13

## C. Property Interest

Taylor-Bray moves for summary judgment on the grounds that she has been deprived of a protected property interest in employment, in an apparent attempt to reinstate a due process claim. As discussed above, the only claims that remained are the Title VII claims, all other claims having been dismissed. Therefore, the Court will deny Taylor-Bray's motion for summary judgment as to this issue.

## V. CONCLUSION

For the above reasons, the Court will grant DSCYF's Motion for Summary Judgment (D.I. 40) and will deny Taylor-Bray's Motion for Summary Judgment (D.I. 42).

An appropriate Order follows.